## Arthur et al. *versus* Sylvester et al.

|105 233|
|163 157|

1. Where title papers of property are placed in the hands of a real estate broker for the sole purpose of effecting a sale of the property, the broker has no lien on said documents for reimbursement of his expenses incurred in an unsuccessful attempt to make a sale.

2. In such a case, the retention of the papers by the broker, against the will of the owner, is a tort, for which an action of trover will lie, and in such action the broker cannot set off his said charges or expenses against the damages arising from the detention.

January 31, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 3, of *Philadelphia county:* Of January Term, 1884, No. 33.

Trover, by Rebecca J. Arthur et al., administrators of Charles J. Arthur, deceased, against Frederick Sylvester and Charles Sylvester, trading as F. Sylvester & Brother, for a deed and plan of real estate.

On the trial, before LUDLOW, P. J., the following facts were admitted or undisputed: The plaintiffs as administrators of Charles J. Arthur, deceased, placed in the hands of the defendants, who were real estate brokers, a deed and plan of real estate belonging to said decedent, for the purpose of effecting a sale of said property. The defendants failed to effect the sale, and the property was subsequently sold on order of the Orphans' Court. The plaintiffs then requested the defendants to return the deed and plan, but the defendants refused so to do, unless they were first paid a sum admitted to be due them for expenses incurred by them in attempting to sell the property.

The court instructed the jury to find a verdict for the plaintiffs for such damages as they might find the plaintiffs had suffered by reason of the said detention, reserving as questions of law the following:

1. Whether the defendants had a lien on this deed and plan for their charges.

2. Whether the defendants have a right in this action to defalk from plaintiff's damages the amount of their charges.

Verdict accordingly for $48. The court subsequently entered judgment for the defendants on the point first reserved, filing the following opinion:

"Since Dubois' Appeal, 2 Wright, 234, it cannot be doubted that an attorney 'may retain papers intrusted to him until he has been paid for services rendered in regard to them.' The defendant, it is true is not an attorney, but is a conveyancer of repute, and as such, was possessed of that peculiar skill which his business required. If an attorney has a *quasi* lien upon the papers of a client in his possession, why should not a conveyancer have the same right? We cannot see a distinction. If tradesmen, factors, bankers, insurance brokers and lawyers have a lien upon chattels in their possession, upon what principle of law or equity should conveyancers be excluded?"

Judgment accordingly for the defendants. The plaintiffs thereupon took this writ of error, assigning as error the entry of judgment as aforesaid.

*John Dolman* and *John Dolman, Jr.*, for the plaintiffs in error.—Dubois' Appeal, 2 Wr., 234, upon which the court below based its action, has no bearing on this case. There, an attorney attempted to maintain a claim for his fees upon a fund in court, which claim was disallowed. In the course of his opinion, Judge STRONG remarked that in a certain sense an attorney might be said to have a lien for his expenses upon the funds and papers of his client. Conceding the correctness of this dictum, which, as broadly stated, might well be disputed (see Foster *v.* Jack, 4 Watts, 334, and Walton *v.* Dickerson, 7 Barr, 376), it by no means follows that therefore a conveyancer, or, as in this case, a real estate broker, has a similar lien. The error of the court arose in confusing general liens with particular liens. A particular lien is of common right and universal allowance, and exists where one has taken a chattel to improve it or increase its value. A general lien is the right to retain the property of another for a general balance of accounts (2 Kent Com., 634), and exists only by special custom or legislative enactment. Here, a general lien is claimed, for no work was done upon the deed or plan, nor were they changed in form or increased in value. Hence, as no special custom or Act of Assembly gives a real estate broker such a lien, and none has been shown or cited, it does not exist: Hollis *v.* Claridge, 4 Taunt., 807; Steadman *v.* Hockley, 15 M. & W., 553; Sanderson *v.* Bell, 2 Crompt. & M., 304.

*Charles Henry Hart*, for the defendants in error, cited Fris-

well *v.* King, 15 Simons, 191; Balsbaugh *v.* Frazer, 7 Harris, 99; Dubois' Appeal, 2 Wr., 235; St. John *v.* Diefendorf, 12 Wend., 261; Hunt *v.* McClanahan, 1 Heisk. (Tenn.), 510.

Mr. Justice TRUNKEY delivered the opinion of the court, March 3, 1884.

Upon the admitted facts: "1. That defendants were real estate brokers for plaintiffs; 2. That a sum was due them for cash expended as brokers in attempts to sell property; 3. That defendants had possession of deed and plan in suit, and refused to deliver them to plaintiffs without payment of claim;" two points of law were reserved: "1. Whether defendants had a lien on this deed and plan for their charges; 2. Whether the defendants have a right in this action to defalk from plaintiffs' damages the amount of their charges."

No evidence was adduced that by custom or usage a real estate broker is entitled to a lien, for his services or expenses in attempts to sell the property, on the title papers in his possession; nor has the able counsel for defendants cited a precedent where such claim of lien was sustained. The claim appears novel. This is not the case of an attorney-at-law entrusted with papers by his client, and it would be a mere dictum to say that an attorney may have a lien on such papers for fees in business to which the papers had no relation. Nor are the defendants conveyancers, as this case comes; but if they were, it does not appear that they did any thing upon the deed or plan. A certificated conveyancer is not entitled to a lien upon deeds delivered to him, and with and in respect to which he has done business, the business not having been done upon the deeds or their value thereby increased: Steadman *v.* Hockley, 15 M. & W., 552.

The defendants contend that the position of a real estate broker or conveyancer in regard to papers placed in their hands for professional service by a client, is precisely the same as that of an attorney or solicitor, or other bailee who expends time and money upon the property of the bailor. This may be conceded if meant to apply only to cases of particular lien where the claim is for labor bestowed or money expended on the papers so placed. By the common law, where a man receives from the owner an article for a purpose involving labor or expense upon such article, he may detain it until he is paid for his labor or expenses. How far the right of lien extends in favor of an attorney in Pennsylvania, perhaps, is unsettled. Attorneys and conveyancers do not seem to stand on the same footing in England; there it has been said that if a deed be delivered to a conveyancer he may have a lien for anything done upon that particular deed; but an attorney

may have the benefit of the custom if it were another deed than that on which the operation is performed: Hollis *v.* Claridge, 4 Taunt., 807. Where a mortgage was delivered to an auctioneer for the purpose of obtaining the money due thereon, and he made several applications to the mortgagor, but received no money, it was held that he had no lien on the deed in respect of the charges for making the applications; and this was applying like principle as applies to conveyancers. "The distinction is, that when the work is to be done on a chattel to improve it, or to increase its value, the lien attaches, but where it is merely delivered, as in this case, to make a demand upon it, no such right can be supported:" Sanderson *v.* Bell, 2 Crompt. & M., 304.

We are of opinion that when a deed and plan are placed in the hands of a real estate broker for the sole purpose that he shall undertake to sell the property, he has no lien on the deed and plan for his charges and expenses in attempts to make the sale:

This action is founded on an alleged wrongful conversion of the plaintiffs' property. It would fall if the defendants had a lien on the property, for then they would have right of possession until paid. Their charges cannot be defalked or set off against damages arising from their tort.

> Judgment reversed, and judgment is now entered upon the verdict for $48.00 with interest from January 11, 1883.